DORSEY & WHITNEY LLP
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone 602-735-2700
Gregory B. Collins (#023158)
Collins.Greg@dorsey.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Collision Chiropractors, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>State of Arizona, a governmental entity, The Arizona Board of Chiropractic Examiners, a governmental board, Dr. Wayne Bennett, and John and Jane Does I-X, members of The Arizona Board of Chiropractic Examiners that participated in the conduct identified herein.<br><br>  Defendants. | Case No.<br><br>**COMPLAINT** |

## INTRODUCTION

1.  Plaintiff, Collision Chiropractors, LLC ("Collision"), brings this Sherman Act claim against the Arizona Board of Chiropractic Examiners ("the Chiropractic Board" or "the Board"), the current chairman of the Chiropractic Board, Dr. Wayne Bennett (in both his professional and personal capacity), and any other member of the Board who was involved in the Board and Dr. Bennet's anti-competitive campaign to stifle legitimate fee-splitting arrangements amongst the chiropractic community in Arizona. In particular, the Board and Dr. Bennet aggressively campaigned against a potential Arizona State Bill that would legalize fee-splitting among chiropractors. Going well beyond his role as Board Chairman, Dr. Bennet has wielded the power of the Board to impact market practices while wrongly opining on the law,

issuing sweeping dictates like his recent pontification that "[f]ee splitting amongst unethical healthcare providers, including chiropractors, is <u>illegal in all 50 states</u> and is also prohibited by federal law.  In Arizona, improper fee splitting can be a felony offense."  Not only is this an *incorrect* statement of the law, it plainly exceeds his role as Board chairman, and is part of a naked effort to chill the marketplace and stifle legitimate fee sharing arrangements.  Because of Dr. Bennet's actions—especially those directed squarely at Collision—multiple chiropractors have already left Collision and left unchallenged, it appears the Board and Dr. Bennet are intent on destroying Collision's fundamental business model.

## PARTIES AND JURISIDICTION

2. Collision is an Arizona limited liability company providing chiropractic services in Arizona.

3. The State of Arizona is governmental entity that created the Arizona Board of Chiropractic Examiners.

4. The Arizona Board of Chiropractic Examiners was created by the Arizona legislature and its authority is governed by Arizona law.  *See* A.R.S. §§ 32-904, 32-924, and 32-929.

5. Dr. Wayne Bennet is a resident of Maricopa County, Arizona.  Dr. Bennet is a practicing chiropractor and until June 30, 2024, was the Chair of the Board.

6. John and Jane Does are members of the Board. It is not known at this time whether any other member of the Arizona Board of Chiropractic Examiners participated and/or approved the conduct described below. To the extent that any member participated and/or approved the conduct identified below, in an abundance of caution they are named here as John and Jane Doe Defendants. This Complaint will be amended later to identify them by name once the extent of their conduct is known.

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because the cause of action arises under federal law, namely, 15 U.S.C. § 1.  Personal jurisdiction and venue are also appropriate because the events giving rise to the dispute occurred in this District, and all of the parties to the dispute reside within the District.

**GENERAL ALLEGATIONS**

8. The vast majority of Collision's patients are individuals that have been involved in an accident and need medical care. Collision agrees to treat these patients on a medical lien basis, meaning that (in most cases) it does not get paid unless and until the patient's personal injury lawsuit is resolved.

9. While Collision has several full-time W-2 employees on staff, including chiropractors, Collision also operates through a set of contractually bound chiropractors who provide services as member physicians of Collision—the only functional difference between the contractual chiropractors and the W-2 chiropractors is their tax treatment under the Internal Revenue Code.

10. Collision's contract doctors also work in their own practice but agree to work as independent 1099 contracted members of Collision and Collision compensates its contracted doctors as 1099-employees.

11. Collision currently works with over 30 contractual member physicians, which are paid as independent contractors. These contractual member physicians provide services to patients and work in conjunction with Collision, who consults, provides administrative support, and has direct management of the patient case files and records.

12. Members of the Board are well-aware of Collision's business model and have been aware of it since Collision started operating more than seven years ago.

13. Many chiropractors practicing in Arizona utilize a similar business model where working chiropractors are compensated a percentage of the amount the company they work for receives from personal injury cases/settlements.

14. Despite that the Board had been aware of Collision's business model for years and aware that many chiropractors are paid under similar business models, for the past three years the Board has been "investigating" whether Collision's business practices—in particular, Collision's practice of employing chiropractors as 1099-employees—is in compliance with Arizona's Chiropractic Rule R4-7-902(34), "Unprofessional or Dishonorable Conduct," which reads:

> [It constitutes unprofessional conduct to] Directly or indirectly divid[e] a professional fee for patient referrals among health care providers or health care institutions or between providers and institutions or enter[ ] into a contractual arrangement to that effect. This subsection *does not* prohibit the members of any regularly and properly organized business entity recognized by law from dividing fees received for professional services among themselves as they determine necessary. (emphasis added).

15. More than three years ago, on June 23, 2021, the Board formally initiated an investigation into Collision by sending an investigative letter to Collision's manager, Dr. Michael Papamatheakis.

16. The Board's investigation into Collision has been widely followed throughout Arizona's chiropractic community because many chiropractors operate like Collision. Even though Collision is not alone, the Board has singularly targeted Collision as if it were the only practice using independent contractor physicians, and has acted so aggressively that the Board has single-handedly altered widespread market practices—all without any State oversight.

17. For instance, in several public hearings, the Board openly questioned whether Collision's relationship with its contracted physicians constitutes "a referral fee" or "fee splitting" under R4-7-902(34). The Board has also questioned whether the relationship that Collision holds with its contracted physicians, is incident to a "regularly and properly organized business entity recognized by law" such that the bar on referral fees does not apply.

18. To be clear, Collision is in full compliance with R4-7-902(34), because Collision is a properly organized business entity and its contracted physicians are all paid as independently contracted, physician-members of the Collision service organization. Indeed, the contract that Collision uses, which all of its independent contractors sign, was prepared by an attorney working at one of the largest law firms in the country.

19. During another Board meeting on October, 25 2023,[1] the Board brazenly resolved to contact each and every one of Collision's contracted member physicians and, as the Board's Chairman Wayne Bennet put it, "offer an open hand" by informing them that if they were to

---

[1] Recordings of the Chiropractic Board hearings are available on the following website https://chiroboard.az.gov/about/board-meetings.

4

self-report they "could avoid very severe consequences" (indicating his own presumption, before taking any evidence, that these independent contractor physicians had violated Rule R4-7-902(34)).

20. Following Dr. Bennet's stunning comments, on November 1, 2023, counsel for Collision wrote to Alissa Vander Veen, the Executive Director of the Board, advising her that under Arizona law the Board lacked authority to preemptively plea bargain with the independent contractor physicians—not least because the Board has ***no authority*** to interpret the law.

21. As Collision's November 1, 2023, letter explained: "The Board was created by the Arizona legislature and its authority is governed by Arizona statutes: specifically ARS §§ 32-904, 32-924, and 32-929. These statutes do not authorize this course of conduct and based upon your own written statements and Chairman Bennet's statements on the record, we believe, as discussed below, that the statements reveal an inconsistent method of treating licensees whom the Board believes may have violated some statute. In turn, we assert this disparate treatment evidences a concerted effort to reach a desired result adverse to Dr. Papamatheakis."

22. After receiving the November 1, 2023, letter, the Chiropractic Board apparently changed course and did not proceed to offer any "open hands" or otherwise contact Collision's contracted member physicians. Upon information and belief, the Board failed to send any further communications because the Arizona Attorney General's Office—the Board's legal advisor—told it that doing so would violate Arizona law.

23. Indeed, even former members of the Board with no connection to Collision agree that Collision has not violated R4-7-902(34). For instance, on April 30, 2024, Dr. William Gallagher testified under oath that R4-7-902(34) is so poorly written that it is impossible to determine whether paying a chiropractor as an independent contractor violates the rule. Moreover, previous cases before the Board involving allegations of fee splitting among independent contractual relationships were summarily dismissed.

24. But that hasn't stopped the Board's efforts to change market practices or to crater Collision's practice. On April 4, 2024, the Board held a special meeting where it aggressively

5

questioned its own attorney—an Arizona Assistant Attorney General—on the record regarding when and how R4-7-902(34) is to be applied and/or interpreted.

25. The confusion regarding the intent, meaning, and scope of R4-7-902(34) was apparent from the recorded dialogue between the Board and its counsel, and fully supported Dr. Gallagher's view that the Rule is at best ambiguous and, at worse, so poorly written that is virtually undecipherable.

26. In response to the confusion R4-7-902(34), a bill was put forward in the Arizona legislature that, among other things, clarified this issue. Arizona Senate, Senate Bill 1405 (originally SB 1233), among other things, sought to clarify the roll of fee splitting and independent contractors.

27. Exceeding any plausibly authorized authority—the Board, through its current Chairman Wayne Bennett, twice sent emails to every licensed chiropractor in Arizona expressing opposition and outrage towards the bill. And he has done so not as a private citizen, but by wielding his role as Board Chairman, sending the communications from a state issued email address (generalinfo@azboardofchiropracticexaminers.ccsend.com).

28. Beyond these emails, Bennet and has signed numerous correspondence and endorsed interpretations of laws and has done so by explicitly relying on his role as the Chairman of the Board.

29. For instance, during the April 4, 2024 Board meeting, Bennett questioned Assistant Attorney General Casey Hutchinson regarding whether the Board is permitted to make public statements, like the statements included in his May 1, 2024, email (included in full below), regarding pending legislation. As Assistant Attorney General Hutchinson explained, "The Board obviously can take a position regarding licensing and public policy matters, anything under the Board's purview, the only thing that the board cannot communicate to licensees is things that, as the members present obviously know, confidential information, matters under investigation, and patient information, things like that."[2]

---

[2] This discussion takes place at one-hour and eighteen minutes into the Board meeting, which (again) is available here https://chiroboard.az.gov/about/board-meetings

30. In response, Bennett indicated that "he felt obliged" to communicate with licensees regarding issues of patient safety and "fee-splitting." Assistant Attorney General Casey Hutchinson interjected after Dr. Bennett mentioned "fee splitting", stating, "Sorry Dr. Bennett, I would just caution against anything that would, that could, be interpreted as providing – advising to licensees – legal advice to licensees about what the statutes are and what they mean, etc." When Bennett asked for clarification, Assistant Attorney General Hutchinson clarified for Bennett, "Nothing about that prevents the Board from, in a communication for example, quoting these are the statutes, *but we cannot tell you what these [statutes] mean or how to abide by them*." (Emphasis added.)

31. In direct violation of the Arizona Attorney General's advice, on May 1, 2024, Dr. Bennett sent an email to every Arizona chiropractor, using his state issued email, in which he provided his own legal advice regarding "what [Arizona] statutes mean and how to abide by them."

32. The entirety of Dr. Bennett's email is as follows:

**To:** All Arizona Chiropractic Licensees

**From:** Arizona Board of Chiropractic Examiners

**Ref:** Senate Bill 1233/1405

Senate Bill 1405 (originally SB 1233) was introduced in the Arizona State Legislature earlier in the current legislative session. This bill proposes many amendments and additions to the Statutes and Rules governing how the Arizona Chiropractic Board of Examiners performs its duties.

From the outset, the Arizona Board of Chiropractic Examiners has opposed this legislation. While the Board has identified many issues with the language of SB 1233/1405, one of our primary concerns is centered around the subject of "fee splitting". **Fee splitting amongst unethical healthcare providers, including chiropractors, is illegal in all 50 states and is also prohibited by federal law. In Arizona, improper fee splitting can be a felony offense**.

> If passed in its current form, Senate Bill 1233/1405 would open the door to what is currently illegal fee splitting by chiropractors in Arizona. It is our board's adamant opinion that this would represent a significant threat to the safety of the public.
>
> It is the duty and responsibility of the Arizona Board of Chiropractic Examiners to investigate, and act appropriately upon, rule and statutory violations concerning fee splitting, up to and including license revocation and reporting these violations for criminal prosecution.
>
> I have included for your review three links for additional information. The first is a list of specific examples of the language in the bill that we believe to be inappropriate and dangerous, not only to the public but to the chiropractic profession as well. The second is the most recent version of **SB 1233/1405**. The third is the Model Practice Act for Chiropractic Regulation, a reference guide to chiropractic regulatory language published by the Federation of Chiropractic Licensing Boards, whose service area includes all US states, all Canadian provinces, and several foreign countries. The Arizona Chiropractic Practice Act is patterned after this widely recognized document.
>
> We encourage all Arizona chiropractic licensees to review these materials and become informed on this matter as it is being considered in our state legislature.
>
> Sincerely,
>
> Wayne Bennett, DC, DABCO
>
> Chairman
>
> Arizona Board of Chiropractic Examiners

33. In the email communication, Dr. Bennett informed all chiropractors that "Fee splitting amongst unethical healthcare providers, including chiropractors, **is illegal in all 50 states** and prohibited by federal law. In Arizona, improper fee splitting can be a felony offense." (Emphasis original).

34. Dr. Bennett further stated, "If passed in its current form Senate Bill 1233/1405 would open the door to what is **currently illegal fee splitting by chiropractors** in Arizona." (Emphasis added).

35. Dr. Bennett also explained that the punishment for "fee-splitting" includes "revocation" of your license and "reporting these violations for criminal prosecution."

8

36. Bennett's email ignored the prior advice from the Arizona Assistant Attorney General who specifically warned the Board against providing such legal advice or advisories.[3] Yet, Bennett's email repeatedly took positions as to what Arizona law is, what certain Arizona statutes mean, and even threatened chiropractors with revocation for failing to comply with his interpretation of the law.

37. To Collision's knowledge, no Board meeting was held or vote taken by the members as to the contents of this email or the propriety of issuing the email—nor is there any evidence that Bennet was authorized to sign on behalf of all Board members or the State Attorney General's Office. But to the extent other Board members were consulted in advance and directly approved of the contents and dissemination of the email, they too violated their own counsel's advice.

38. Dr. Bennett's conduct has also raised significant concerns with the Arizona legislature, as it should.

39. On May 7, 2024, Arizona State Senator Janae Shamp sent an email to Dr. Bennett informing him that his May 1, 2024, email misstated Arizona law. According to Senator Shamp, "your statement asserting that fee splitting among 'unethical healthcare providers, including chiropractors, is illegal in all 50 states and is also prohibited by federal law.' You emphasize that improper fee splitting in Arizona can constitute a felony offense. However, these assertions are not entirely reflective of the legal landscape outlined by Arizona statutes and regulations."

40. Senator Shamp's email further stated, "As outlined in the Arizona Administrative Code, Title 4, Chapter 7, Article 9, Section 902 (34) [R4-7-902 (34)], fee splitting among healthcare providers, including chiropractors, is permissible under certain circumstances. The regulation specifies that the direct or indirect division of professional fees for patient referrals among healthcare providers or institutions is not prohibited, provided it is conducted within the confines of a properly organized business entity recognized by law."

41. In response, Dr. Bennet wrote the following:

---

[3] The Arizona Attorney General's advice was consistent with the training that all board members received from the Arizona Attorney General's office when they joined the Board.

9

> Senator Shamp, I am in receipt of your formal notice and I thank you for the opportunity to review the matters that you bring to my attention. ***I will revisit the issues*** that you raise,
> That said, ***this shall serve as an official response to your notice*** advising you that ***I disagree*** with your allegations on multiple grounds.
>
> Wayne Bennett, DC, DABCO
> Chairman
> Arizona Board of Chiropractic Examiners

42. Bennet sent his "official response" (implying it was the Board's response) as the Chairman of the Board within 10-minutes of receiving Senator Shamp's email. He did not present it to the Board. He did not seek a consensus of Board Members as to how to respond and no official vote took place as to how or even whether a response to Senator Shamp's email should be sent.

43. The italicized and bolded portions of Bennet's response reveal his mistaken belief that he has the power to unilaterally act for and on behalf of the Board in contravention of every legal and ethical principle that he swore an oath to uphold upon his appointment. These unilateral actions serve as further evidence of his waiver of immunity for his personal misconduct and his usurpation of the Board itself.

44. But beyond his own impropriety, the Board and Dr. Bennett's actions to impact market practices related to fee-splitting has already caused significant monetary and reputational harm to Collision.

45. Roughly an hour after Dr. Bennett's email went out, one of Collision's contracted member physicians, Collision's Gilbert Arizona location, terminated its relationship with Collision.

46. Collision's counsel previously asserted, orally and in writing, that actions threatened by Bennett and the Board in October 2023 (contacting Collision's contracted member physicians suggesting they self-report) would result in the destruction of Collision's business. Bennet and the members of the Board were on notice that such conduct was not permitted under Arizona law and that such conduct would cause irreparable harm to Collision—all of this *before*

Bennet sent the May 1, 2024, email purporting to ban all fee-splitting arrangements among chiropractors.

47. Indeed, Collision's competitors are actively using Bennett's May 1, 2024, email against Collision. On May 6, 2024, West Phoenix Chiropractors posted the following "announcement" on its Facebook page, promoting the false notion that fee-splitting is illegal:



48. While State agencies generally enjoy immunity from suit for anticompetitive behavior, the United States Supreme Court explained that this immunity is not unlimited: "Limits on state-action immunity are most essential when the State seeks to delegate its regulatory power to active market participants, for established ethical standards may blend with private anticompetitive motives in a way difficult even for market participants to discern. Dual allegiances are not always apparent to an actor. In consequence, active market participants cannot be allowed to regulate their own markets free from antitrust accountability." *N.C. State Bd. Of Dental Examiners v. Fed. Trade Comm'n, 574* U.S. 484 (2015).

49. Accordingly, when the State delegates its regulatory powers to market participants, as it has with the Board, the State agency is not immune unless the State "exercise[s] power to review [the] particular anticompetitive acts of private parties [the Board] and disapprove those that fail to accord with state policy." *Id*. at 507.[4]

50. With regard to most of the actions taken by professional boards throughout Arizona, the State exercises a crucial review power. Indeed, this is one of the primary purposes of the Office of Administrative Review.

51. The State has not, however, had any role in reviewing Bennet's recent communications or the Board's recent crusade against fee-splitting. Dr. Bennett's May 1, 2024, email was not approved by the State before it was sent. More importantly, Collision currently has no right by statute or otherwise, to challenge the contents of the email, which has already caused significant harm.

52. Despite issuing repeated dictates declaring that fee-splitting among chiropractors is illegal—and being told those dictates were not only wrong, but beyond the Board's purview—the State has not done anything to correct those misstatements or otherwise to review the conduct of this wayward Board.

---

[4] The May 1, 2024, email is a statement of the Board, just like the policy statement that the North Carolina dental board sent that was at issue in *N.C. State Bd. Of Dental Examiners v. Fed. Trade Comm'n, 574* U.S. 484 (2015).

12

53. It is also clear that the Arizona Assistant Attorney General advising the board knew the law as she previously expressed her concerns with Bennett's proposed actions and efforts, and, upon information and belief, would have advised the Board and Bennett how to maintain state-action immunity. As Assistant Attorney General Hutchinson stated, "**we cannot tell [chiropractors] what these [rules or statutes mean] or how to abide by them.**"

54. Accordingly, it is clear the Board and Bennett, themselves market participants, are acting outside of any State oversight and are doing so in manner that has directly impacted the chiropractic marketplace.

55. Plaintiff has complied with A.R.S. § 12-821.01, by timely serving a notice of claim on all defendants. It has been more than 60-days since that notice of claim was served.

**COUNT I**
**(Violation of the Sherman Act, 15 U.S.C. § 1)**
**(All Defendants)**

56. Plaintiff realleges and incorporates all of the foregoing paragraphs as if fully set forth here.

57. The Sherman Act, 15 U.S.C. §§ 1, provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

58. The Arizona Board of Chiropractors and Dr. Bennett (at a minimum) have violated the Sherman Act by restraining commerce through their unilateral efforts to forbid fee-splitting among chiropractors.

59. As a licensing agency, the Board unquestionably maintains significant power to impact the relevant market for chiropractic services throughout Arizona.

60. The Board and Dr. Bennett have improperly demonstrated their market power by pronouncing that fee-splitting is illegal no matter the circumstances and thereby causing multiple contracted member physicians to leave Collision, putting in jeopardy Collision's entire business, and that of the many other practices that also rely on fee-splitting arrangements.

61.     The Board and Dr. Bennett's actions are not shielded by any form of state-action immunity, or otherwise (including under the Eleventh Amendment), because the Board and Dr. Bennett are themselves market participants (i.e., practicing chiropractors).

62.     There is also no evidence of State oversight as to the Board and Bennett's actions regarding fee-splitting. To the contrary, the only related State "oversight" was a clear admonition that Bennett and the Board ***not engage*** in this conduct, or otherwise give legal opinions on this issue.

63.     As clear evidence of the Board and Bennett's improper efforts to influence the market, on May 1, 2024, Bennett explicitly directed every chiropractor in Arizona to refrain from fee-splitting because it is illegal, that doing so would lead to the loss of licensure, and potentially even criminal charges up to and including a felony.  The result of this pronouncement, and the Board and Bennett's broader campaign to prohibit fee splitting, has already impacted the market, including Collision.

64.     Indeed, Collision has already suffered significant verifiable harm as a direct result of the May 1, 2024 email, as well as the Board and Bennett's pronouncements on fee-splitting more broadly.  To date, multiple contracted chiropractors have already withdrawn from their contracts with Collision and there is the potential that the Board and Bennett's crusade against fee-splitting will destroy the entire value of Collision's business.

65.     Accordingly, the Chiropractic Board, Dr. Bennett, and any other member of the Arizona Board of Chiropractic Examiners that approved the Board's pronouncements regarding fee-splitting are liable for improperly restraining the marketplace.

66.     Collision is entitled to an award of damages and costs (including reasonable attorneys' fees) flowing from the Board and Dr. Bennett's improper actions.

Accordingly, Plaintiff requests that the Court enter judgement in favor of Plaintiff and against Defendants as follows:

    A.    Awarding consequential and incidental damages in an amount to be proven at trial;

    B.    Awarding treble damages pursuant to the Clayton Act, 15 U.S.C. § 15(a);

  C. Awarding all of Plaintiffs' attorneys' fees and costs; and

  D. Granting such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 19th day of December, 2024.

                **DORSEY & WHITNEY LLP**

          By: *s/Gregory B. Collins*
             Gregory B. Collins
             2325 East Camelback Road
             Suite 300
             Phoenix, AZ 85016
             Attorney for Plaintiff